MILO P. PALMER, Respondent, *v.* MARY A. DUNHAM *et al.*, Appellants.

*Supreme Court, First Department, General Term, July 9, 1889.*

1. *Will. Lapsed legacy.*—Where a sum of money is directed by the testator to be divided, and invested, and the income of each share to be paid to the four children of his deceased niece, and, upon the death of each child, to pay the principal of the share to his or her lawful issue, share and share alike, each legacy lapses on the death of a child without issue, and his or her share of the principal goes into the residuary estate.
2. *Same. Severance of trust.*—If any of the beneficiaries desire a severance of the trust fund, and it is entirely practicable and in the interest of economy to do so, the court will allow such separation.
3. *Trustees. Bond.*—Even though the judgment directing the appointment of a new trustee, provides for the deposit of securities, amounting to over half a million dollars, with a trust company, from whose custody they are not be withdrawn without the direction of the court, the new trustee should be require to furnish a bond in the penal sum of at least $50,000.
4. *Same. Compensation.*—A trustee who has received the fund, but has not paid it out, is entitled only to half commissions, and the mere transfer of the fund to a new trustee is not such a payment.

Appeal by some of the defendants from a judgment rendered in an action brought to procure a judicial settlement of the accounts of a deceased testamentary trustee, and for other relief.

*Henry W. Hayden,* for Sarah F. Humphreys *et al.*, appellants ; *Thomas B. Odell,* for executors of Nicholas F. Palmer, appellants ; *J. S. Van Cleef,* for Matthew A. Horn, Jr., *et al.*, appellants.

*C. W. Pleasants,* for Georgianna Shannon *et al.*, respond-

ents; *Joseph S. Wood*, for Aaron J. Mixsell *et al.*, respondents; *Will Man*, for plaintiff-respondent; *Mr. Abbott*, for James C. Aiken, respondent.

BARTLETT, J.—The various controversies to which this suit relates arise under the last will and testament of Miss Frances B. Hegeman, deceased, who died in 1878. The executors and trustees named in the will were Nicholas F. Palmer and Richard H. Browne. Mr. Browne died in 1881, and thereafter Mr. Palmer acted as sole executor and trustee until his own death in 1887. The plaintiff in the present action is the son of Nicholas F. Palmer, who had been employed as an accountant in reference to the affairs of the estate, and who, when his father died, took charge of the money, securities, and other property belonging thereto in order to preserve the same. The defendants are the various persons beneficially interested under Miss Hegeman's will. The purpose of the suit was to procure the appointment of a new trustee; to have the accounts of the deceased trustee judicially settled, and his commissions fixed; to enable the plaintiff to account for his own doings relative to the estate, for which he asked a suitable compensation; and to obtain a construction of certain portions of the will, particularly the eighth subdivision of the second article. The case was referred to a referee to take proof and upon his report the court at special term made a decree confirming his conclusions for the most part. From that decree the various appeals are taken which now come before us for consideration.

The questions argued orally and discussed in the numerous briefs relate to four matters:

*First.* The construction of the eighth subdivision of the second article of the will.

*Second.* The power of the court to separate certain of the trusts under the will.

*Third.* The amount of commissions which should be al-

lowed to the executors of the deceased testamentary trustee as his representatives ; and

*Fourth.* The alleged inadequacy of the bond which the decree requires the plaintiff to give as the new trustee. We will consider these various questions in the order in which they have been stated.

The second article of the will begins with these words : " I give, devise and bequeath to my executors hereinafter named, and the survivor of them, so much of my estate in trust, nevertheless, as will enable them to make the following investments and to pay the legacies hereinafter named, that is to say: " Then follow seven subdivisions providing for various specific legacies, and we come to the eighth subdivision, which reads as follows :

" *Eighth.* To divide the sum of $20,000 into as many shares as there shall be lawful issue of my deceased niece, Letitia Frances Young, living at my death, and to invest the same and to apply the interest and income from each of said shares the use of each of the said children respectively, and as they respectively depart this life to pay over the principal of said share to their lawful issue, share and share alike.

Four children of Mrs. Letitia Frances Young survived the testatrix. They were Mrs. Sarah F. Humphreys, Mrs. Amelia Collins, Mrs. Emily Y. Pendleton, and William Young, Jr. The daughters have children, but the son, William Young, Jr., died childless ; and his sisters now insist that his share goes to their children under the provisions of the will, which have been quoted. The referee, however, and the court, at special term, following the referee in this respect, held that the children of the sisters were not entitled to take the share of William Young, but that it fell into the residuary estate under the third article of the will. We think this view is correct. The eighth subdivision of the second article of the will created four trusts of $5,000 each, inasmuch as there were four children

11

of Letitia Frances Young living at the time the testatrix died. The executors were directed to invest these shares and to apply the interest and income from each to the use of these children respectively. And as they respectively departed this life, it was the duty of the trustees " to pay over the principal of said share to their lawful issue, share and share alike."

Reference is made to the use of the word " their " in his clause as indicating that the testatrix had in mind the children of all the life beneficiaries considered as a group rather than the children of each life beneficiary considered separately, but although the language used is not quite as accurate as it would have been to direct the payment of the principal to " his or her lawful issue respectively," we are satisfied that the meaning is the same as if those words had been employed, and that the testatrix intended that upon the death of any one of the life beneficiaries, the share of which that person had enjoyed the income should go to that person's children, and not to the children of any of the other life beneficiaries.

The argument in behalf of the sister's children, proceeds largely upon the proposition that it was the intent of the testatrix, as manifested by her whole will, to create a fund of $20,000 for the benefit of the family of each of her nephews and nieces, each nephew and niece being regarded as the head of a branch of the family, and the gift being designed for the benefit of that branch so long as there were any members of it. Hence it is assumed that it was her desire to have the $5,000 in which William Young, Jr., enjoyed a life estate, go to some member of the young branch of the family rather than to fall into the residuary estate. But we are not to resort to such general inferences, which may or may not be correct, as to the intent of the testatrix, when the language of the clause to be construed is so plain as it is in the present case. The wording is neither ambigu-

ous or obscure, and we are quite clear that it was correctly construed by the court below.

The legacy having lapsed in consequence of the death of William Young, Jr., without children, it follows that his share went into the residuary estate. Matter of Benson, 96 N. Y. 499, 509.

The order of reference directed the referee not only to take testimony as to the questions arising upon the pleadings, but also to nominate a trustee or trustees in the place of Nicholas F. Palmer, deceased. The referee accordingly requested the various parties in interest to nominate persons for the trust, and the plaintiff was named by a considerable number. Some of the parties, however, nominated the trust companies, and desired that their shares of the trust estate should be set apart from the rest and placed in charge of the corporations which they named.

The referee reported against the severance thus suggested, chiefly because he thought it would occasion inconvenience and confusion at that time, but the court below differed from him on this point, and held that a severance of the trusts, such as was requested by a number of the parties in interest, was unobjectionable, and that they should be permitted to select some trust company under the sanction of the court, as the sum belonging to each trust could readily be paid over by the plaintiff, who would continue to have charge of the greater part of the trust estate. The power to authorize a separation of the trusts is undoubted, and as these beneficiaries desire it, and it appears to be entirely practicable and in the interest of economy in administering the estate, we see no valid objection to allowing a severance.

The amount awarded to the executors of Nicholas F. Palmer on account of his services as trustee, was only one-half of the commission allowed by law to trustees for receiving and paying out moneys. They claim that he was entitled to full commissions. We think not.

It was said in the case of Wagstaff *v*. Lowerre (23 Barb. 209), that the compensation of trustees is given for the care and management of the estate, and not for the simple act of receiving and paying out. It is nevertheless true that full commissions are not deemed to be earned until the trustee has both received and paid out the sum upon which the commission is to be computed. In the present case the trustee had actually received that sum. He had not paid it out, however, and in the constructions of statutes allowing commissions for moneys received and paid out, the practice of the courts of this state has been uniform, from the time of Chancellor KENT, to the effect that one-half of the commission is to be regarded as granted for receiving funds, and the other half for paying them out. Matter of Roberts, 3 Johns. Ch. 43; Matter of Kellogg, 7 Paige 265.

In accordance with the established procedure in this respect, half commissions were awarded to the executors of Mr. Palmer; but the other half for paying out the estate could not properly be allowed until it actually was paid out, and this, so far as he was concerned, was prevented by his death. We do not think the transfer of the property to a new trustee which was rendered necessary by the death of the prior trustee is such a payment as to entitle the deceased trustees to commissions on account of such payment.

The only remaining question argued before us on these appeals relates to the penalty of the bond to be required of the plaintiff as the new trustee. This has been fixed at $25,000. The principal of the estate amounts to over half a million, and is chiefly invested in bonds and mortgages, but the judgment provides for the deposit of the securities with a trust company, from whose custody they are not to be withdrawn without the direction of the court. Under the circumstances we do not think a bond in double the amount of the personalty should be required; but security

in $25,000 is too small, and a bond of at least $50,000 should be furnished.

The decree should be modified so as to require a bond in the penal sum of $50,000, instead of $25,000, and, as thus modified, should be affirmed with costs.

VAN BRUNT, Ch. J., and BRADY, J., concur.