In the Matter of the Estate of HELEN S. CLARKSON, Deceased.

Surrogate's Court, New York County, April 29, 1939.

*Milbank, Tweed & Hope* [*Reyner Samet* of counsel], for the administrators *c. t. a.*

*Morris & McVeigh* [*Joseph W. Goodwin* and *Robert W. Dew* of counsel], for Edith Van C. Jay Adams and Jay Cemetery, Inc.

*Lord, Day & Lord* [*Allen Evarts Foster* and *Henry C. Blackiston* of counsel], for the residuary legatees.

*Edward K. Kennedy,* for the executors, etc., of Laura Jay Wells, legatee.

*Kellogg, Emery & Inness-Brown* [*J. R. Kochendorfer* of counsel], for the House of the Holy Comforter.

*Matthew B. Sentner*, for The New York Association for the Blind.

*Emmett, Marvin & Martin*, for the Home for Incurables.

DELEHANTY, S. In this accounting by administrators with the will annexed construction of the will of deceased is asked to determine whether it was the intention of deceased to charge certain real estate of which she died seized with the payment of general legacies. Deceased died on August 21, 1937. Her will is dated May 18, 1934. At the time of her death she was possessed of personal property having a value of about $800,000. Her real estate (other than that specifically devised) was appraised at $103,000. The will gives general legacies aggregating $462,000. After paying out of personalty the debts, administration expenses, taxes of about $130,000 and other charges and seventy-five per cent of the face amount of the legacies, the administrators have a balance on hand of approximately $100,000 in personalty. They have also the realty not specifically devised. This is valued at $103,000.

The will disposes of the residuary estate as follows: " I give and bequeath to Arthur Mason Du Bois and to Robert Ogden Du Bois my residuary estate. I order and direct that any transfer or inheritance tax which may be assessed and imposed upon any of the legacies gifts and provisions contained in this my will shall be paid out of and charged against my residuary estate as an expense of administration. Also that my executors are authorized to sell such part of my real estate and securities as they may consider advisable."

The amount of personalty on hand is insufficient to make full payment of the general legacies. It is contended that deceased intended that these legacies should be a charge upon the real property not specifically devised and that sufficient of the real property passing under the residuary clause should be sold to enable payment of the general legacies in full. The residuary legatees contend that deceased did not intend to subject her residuary realty to the payment of general legacies and that they must abate since there is insufficient personalty with which to pay them in full.

The parties interested in the question have stipulated various facts respecting prior wills of deceased and respecting the resources of deceased at the time of the execution respectively of these prior wills. They have also stipulated the sources of deceased's property and the relationships to deceased of the persons whom she benefited by certain *inter vivos* gifts and those whom she intended to benefit by her various testamentary provisions. The stipulation of such facts is accompanied, however, with a reservation by the parties

that none of them " waive their rights to claim that any or all of the foregoing stipulated facts are not pertinent or relevant to the issues herein."

The court has not given any consideration to the stipulated extrinsic facts for the reason that it finds within the will itself clear and unambiguous direction for the use of any real estate in the residuary for the payment of administration expenses and because it finds that such expenses under this will include estate taxes. The will of a deceased is to be construed if possible so as to carry out the full program of the maker. Unless the residuary real estate is used to supplement the personalty now available the result will be that the estate taxes are charged against the general legatees and not against the residuary estate. The will expressly charges the taxes against the residuary estate and the terms of the will should be carried out. While in the instant case there appears to be an unpaid balance of general legacies of about $116,000 (with cash of $100,000 on hand) and hence a need of only $16,000 to be derived from the residuary realty, the rule in the will would operate if the whole of the residuary realty were required.

The scheme of the will authorizes and directs the fiduciaries to sell the real estate if that sale is necessary for the payment of the taxes. The fiduciaries cannot ascertain what is the residuary estate under this will except by first setting aside out of the personalty on hand the amount necessary to pay debts, administration expenses (other than taxes) and the general legacies. Under this will the remainder is called the residuary and that remainder is charged with the taxes. On that concept of the directions in the will there would be available in the hands of the fiduciaries more than enough to pay the general legacies. The fact that the fiduciaries have used some of the personalty to pay the taxes does not alter the scheme of the will nor give to the residuary legatees any greater right than they would have had under a different scheme of marshaling of the assets. Accordingly the court directs that the general legacies be paid in full and that such part of the residuary real estate as is needed for the purpose be sold.

A problem respecting commissions is involved in the proceeding. When the deceased died on August 21, 1937, her assets were worth more by $180,000 than was their value on November 23, 1937, when letters of administration with the will annexed issued to her administrators. The latter claim commissions on the value existing at the time of *death* though they were not then in office and of course had no authority to deal with the assets until their letters were issued to them. The will here speaks of executors but it appointed none. As a consequence the appointment of adminis-

trators was necessary. While of course these administrators became vested by statute with the powers of executors (Surr. Ct. Act, § 225), they are not the selections of deceased and they are not granted by deceased any powers whatever respecting her property. If they were successor administrators coming into the estate because of the death of an executor there would be no room even for argument about their present application. In such circumstances they would be allowed commissions only on the actual property to the management of which they succeeded and on the values at the time that their letters issued. Purely because of the accidental fact that there was no prior fiduciary these administrators say that they are entitled to charge this estate (there being three of them) nearly $6,000 in excess of the commissions payable on the value of the property *which they actually administered.* Commissions are not a bonus. They are compensation allowable for service provided the service has been adequately performed. They are allowed only for service in respect of property actually managed. For instance, no commissions are collectible on realty specifically devised, though deceased owned that as well when she died. The property they managed was property having a value of $716,332.98. It is in respect only of that volume of property that the authority to act was granted in the letters of administration issued to petitioners. (Compare *Matter of Brann,* 148 Misc. 310, and cases there cited.) Commissions will be allowed only on the basis here stated.

Submit, on notice, decree construing the will and settling the account accordingly.